1  **WO**

6  IN THE UNITED STATES DISTRICT COURT
7  FOR THE DISTRICT OF ARIZONA

9  Dung Van CHAU,  )  No. CIV 03-00422-PHX-SMM
   )
10       Petitioner,  )  **MEMORANDUM OF DECISION AND ORDER**
   )
11  vs.  )
   )
12  )
   UNITED STATES DEPARTMENT OF )
13  HOMELAND SECURITY,  )
   )
14       Respondent.  )
   )
15  _____)

This case was transferred to this Court from the United States Court of Appeals for the Ninth Circuit for a *de novo* determination of Petitioner's citizenship. Chau v. INS, 247 F.3d 1026, 1032 (9th Cir. 2001). Since then, the Court has allowed the parties substantial time to develop the factual and legal bases for their positions. Pending before the Court is Respondent's Motion for Summary Judgment (Doc. No. 54). While the Court has not conducted a hearing, it is capable of reaching a legal decision on the Record before it. Therefore, after considering the arguments raised by the parties in their briefings and the entire case file, the Court hereby issues the following Memorandum of Decision and Order.

### FACTUAL BACKGROUND

The following facts are undisputed.

Mr. Chau ("Chau" or "Petitioner") was born in Saigon, Vietnam on November 8, 1971. (Pet'r's SOF ¶ 1; Resp't's SOF ¶ 1.) His mother, Thi Mai Chau ("Ms. Chau"), is a native and citizen of Vietnam. (Pet'r's SOF ¶ 2; Resp't's SOF ¶ 7.) Neither Petitioner nor Ms.

1  Chau know the specific identity of Petitioner's father. (Pet'r's Resp. at 7, lines 11-12; Resp't's
2  SOF ¶ 11.) Ms. Chau claims that she met Petitioner's father on two occasions at a bar in
3  Vietnam and that she was pregnant one month after meeting. (Trans. of Deportation Hr'g at
4  p. 74, lines 2-4, p. 75, line 11.) She reports that she did not speak English and Petitioner's
5  father did not speak Vietnamese. (Id. at p. 98, lines 1-6.) She states that he was in the U.S.
6  forces in Vietnam because he was dressed in a paratrooper's uniform when she met him. (Id.
7  at lines 8-11.) Ms. Chau reports that his name was "Nick" (or "Net") and that he was tall and
8  dark with a dimple on a cheek. (Id. at lines 11, 20-24.) Ms. Chau states she has had no
9  further contact with Petitioner's father. (Id. at p. 75, lines 11-12.) She states that Petitioner
10 resembles his father because he is tall and dark, and he had a dimple on his cheek as a child.
11 (Id. at lines 2-6.)

12  Petitioner states that his father was an African-American because he was given a
13 nickname of "Dung Medan," which means "Dung a Black American." (Id. at p. 104, lines
14 24-25 - p. 105, line 1.) Petitioner entered the United States with his mother and half-brother
15 on December 4, 1984 as a "refugee" under § 207 of the Immigration and Nationality Act.[1]
16 He was domiciled in Arizona from that time until he reached the age of twenty-one. On June
17 8, 1987, Petitioner's status was adjusted to that of a lawful permanent resident alien.
18 //
19 //
20 //
21
22

---

23  [1] Petitioner disputes Form I-590, which shows he entered the United States as a refugee
24  (Pet'r's Obj. to Resp't's SOF ¶ 1), but also admits that he indeed entered this country as a
    refugee (Resp. at 4). The Court finds that Petitioner's evidentiary Objections to the
25  immigration forms proffered by Respondent are not well-taken, however, as the documents
    fall within an exception to the hearsay rule (i.e., FRE 803(8)), and because documents need
26  not be authenticated at the summary judgment stage. See Celotex Corp. v. Catrett, 477 U.S.
27  317, 324 (1986). Additionally, the Court notes that Chau himself offers documents that are
    not authenticated (and, in at least one instance, proffers the same document as Respondent).
28  See, e.g., Pet'r's Ex. 1 at p. 0295 and Resp't's Ex. 5 at p. 0321.

**PROCEDURAL BACKGROUND**

The Immigration and Naturalization Service ("INS"[2] or "Respondent") initiated deportation proceedings against Chau in 1996. The INS charged that Chau was subject to deportation because (1) he is not a citizen of the United States, and, (2) therefore, he is deportable pursuant to 8 U.S.C. § 1252(a)(2)(A)(ii) (1994), Immigration and Nationality Act ("INA") § 241(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

In proceedings before the Immigration Judge ("IJ"), Chau asserted that he was not deportable; Chau claimed he is a derivative citizen of the United States pursuant to Section 301 of the INA (8 U.S.C. §1401) and provisions of Pub. L. No. 97-359 (the "Amerasian Immigration Act"[3] or "AIA"), 96 Stat. 1716 (1982) (codified in 8 U.S.C. § 1154(f)). Chau argued that because he was admitted to the United States as a child of a United States citizen under the AIA, and because § 301's requirements were met, he established his derivative citizenship pursuant to Section 301(g) of the INA (8 U.S.C. §1401).

On March 3, 1998, the IJ found that Chau entered the United States under the AIA, which provided evidence of his derivative citizenship. The IJ further determined that Chau's father likely met the residency requirement of INA § 301. Consequently, the IJ concluded that the INS had failed to show that Chau had no claim to citizenship, and that Chau is a derivative citizen of the United States. Chau's deportation proceedings were terminated. The INS appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and, on March 19, 1999, the BIA sustained the appeal and ordered Chau deported from the United States. The BIA rejected the IJ's finding that Chau had entered the United States pursuant to the AIA

---

[2] Although the INS is no longer an independent agency and its functions have been transferred to the Department of Homeland Security, the Court will refer to Respondent as "INS" throughout this Order to preserve consistency.

[3] The Court will "refer to Public Law 97-359 as the 'Amerasian Immigration Act,' one of names by which it is commonly referred." Chau, 247 F.3d at 1028-29 n. 4.

1  and concluded that Chau failed to provide sufficient evidence to demonstrate that his
2  unknown father satisfied the residency requirement of INA § 301.

3  Chau then petitioned the Ninth Circuit Court of Appeals for review of the BIA's
4  decision. Chau contended that "INA § 242(b)(5)(A), 8 U.S.C. § 1252(b)(5)(A), entitles him
5  to a determination by th[e] court that he is a United States national and, therefore, not
6  deportable." Chau v. INS, 247 F.3d 1026, 1027 (9th Cir. 2001). In the alternative, Chau
7  "request[ed] that [the court] transfer this matter to the United States District Court for
8  Arizona for a *de novo* determination of his claim to United States citizenship, pursuant to
9  INA § 242(b)(5)(B), 8 U.S.C. § 1252(b)(5)(B)." Id. at 1027-28.

10  In his petition, Chau "conten[ded] that his entry into the United States under the
11  Amerasian Immigration Act . . . is undisputed and that such entry mandates a determination
12  by this court that he is a citizen or that the only remaining factual question precluding a
13  determination of citizenship is whether his father met the residency requirements of INA §
14  301, 8 U.S.C. § 1401 (1970)." Id. at 1030. Chau also argued that he is "'a derivative citizen'"
15  because "Congress, in enacting the Amerasian Immigration Act, conferred citizenship on all
16  persons immigrating to the United States under the provisions of that Act." Id. In the
17  alternative, he contended that

> because the Amerasian Immigration Act classifies its beneficiaries as children of United States citizens, entry into the United States under that Act (1) precludes the INS from contesting [his] claim that he is the only child of a United States citizen and (2) leaves only the question of whether [his] father met the residency requirements of § 301.

21  Id. The Ninth Circuit did not adopt either argument. Id.

22  The Ninth Circuit also found that there were "genuine factual disputes precluding a
23  determination . . . of Chau's derivative citizenship." Id. at 1032. Therefore, the Ninth
24  Circuit transferred the matter to this Court "for a *de novo* hearing on Chau's claim to United
25  States citizenship." Id. The Ninth Circuit identified the following "genuine issues of fact
26  material to Chau's claim to derivative citizenship: the identity of Chau's father, whether Chau
27  immigrated to the United States under the provisions of the Amerasian Immigration Act, and
28  whether his father met the residency requirement of § 301." Id. at 1030.

On June 3, 2002 and September 9, 2002, this Court conducted status hearings. On October 18, 2002, the INS filed a Motion for Summary Judgment (Doc. No. 11), arguing that Chau could not establish derivative citizenship because he does not know the exact identity of his father. The Court denied that Motion on September 15, 2003. (Doc. No. 19) Addressing an issue initially raised by the Ninth Circuit in a footnote, Chau, 247 F.3d at 1032 n. 8, the Court found that Chau, as a child born out of wedlock, is required to meet the heightened proof-of-paternity requirement of INA § 309, as a matter of law. The Court further found that questions of fact remain regarding whether or not Chau can meet those proof-of-paternity requirements. In addition to that legitimation requirement, the Court reiterated the genuine issues of fact previously identified by the Ninth Circuit: [1] the identity of Chau's father, [2] whether Chau immigrated to the United States under the provisions of the Amerasian Immigration Act, and [3] whether his father met the residency requirements of § 301. Subsequent to that Order, the parties engaged in further discovery until the filing of the instant Motion.

On August 10, 2005, the INS filed the pending Motion for Summary Judgment (Doc. No. 54) which this Court now considers.

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines "which facts are material." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Jesinger, 24 F.3d at 1130.

1    A principal purpose of summary judgment is "to isolate and dispose of factually
2 unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate
3 "against a party who fails to make a showing sufficient to establish the existence of an
4 element essential to that party's case, and on which that party will bear the burden of proof
5 at trial."  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir.
6 1994).  The moving party need not disprove matters on which the opponent has the burden
7 of proof at trial.  See Celotex, 477 U.S. at 325.  The party opposing summary judgment "may
8 not rest upon the mere allegations or denials of the . . . party's pleadings, but . . . must set
9 forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see
10 Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda
11 Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

## DISCUSSION

13    The Court now engages in a *de novo* review to determine whether Chau is able to
14 establish eligibility for derivative citizenship pursuant to INA §§ 301 and 309 by the required
15 preponderance of the evidence.  Chau, 247 F.3d at 1032; See Sanchez-Martinez v. INS, 714
16 F.2d 72, 74 n. 1 (9th Cir. 1983).

17    To prove derivative citizenship under § 301, Chau must establish by a preponderance
18 of the evidence that his father was a U.S. citizen at Chau's birth and that his father was
19 physically present in the United States for ten years, five of which occurred after the age of
20 fourteen.  In addition, because Chau was born out of wedlock, he must also show by a
21 preponderance of the evidence that his father met INA § 309's legitimation requirements.
22 Nguyen v. INS, 533 U.S. 53, 59 (2001).  If Chau establishes those three elements by a
23 preponderance of the evidence, he derives U.S. citizenship and cannot be deported.

24    Before analyzing those three statutory elements, the Court first addresses an issue of
25 fact which goes to Chau's ability to establish the identity/citizenship of his father:  whether
26 Chau immigrated to the United States under the provisions of the Amerasian Immigration
27 Act.

28

**1.** *Whether Chau Immigrated to the United States under the AIA*

Whether Chau immigrated to the United States under the AIA arises as an issue of material fact through the Ninth Circuit Court of Appeals' finding that, although not sufficient per se to convey citizenship, entry into the United States under the AIA "is itself evidence, which is to be given whatever 'probative force' the determination 'intrinsically commands.'" Chau, 247 F.3d at 1030-31. Thus, if Chau entered the United States under the provisions of the AIA, his Amerasian immigration status would provide some evidence as to his father's citizenship.

Although Chau previously argued that he entered the United States pursuant to the AIA (Doc. No. 15 at 4; Chau, 247 F.3d at 1030), he now admits that he actually entered into the United States as a "refugee" pursuant to INA § 207, 8 U.S.C. § 1157. (Doc. No. 61 at 4.) Nevertheless, Chau maintains that he was "sought out as a result of the [AIA] and deemed to be qualified for transfer to the United States under the [AIA]." (Id.) Chau entered the United States with his mother and half-brother, and argues that he entered under refugee status due to an anomaly in the AIA which required a mother to "irrevocably release" her child for immigration. (Id. at 4-5.) While the AIA does not allow a mother to accompany her child of a United States soldier father to the United States (8 U.S.C. § 1154(f)), refugee status contains no irrevocable release requirement and allows a family to immigrate together. (Resp.'t's SOF, ¶ 18; Doc. No. 63 at Attachment 1, Report of Proposed Expert Witness.) Thus, Chau contends that even though he entered as a refugee, he was only "placed in this status in order to allow his family members to accompany him." (Id. at 5.)

The INS, however, argues that the Attorney General, in granting refugee status, made no determination that Chau satisfied the requirements of the AIA. While the AIA required a "reason to believe" finding that Chau's father was an American citizen (Doc. No. 63 at 4), the INS contends that refugee status on account of being Amerasian required only a finding that the appearance of the Amerasian applicant indicated that his father was other than Vietnamese. (Id.) Thus, a lower standard existed for attaining refugee status than that required under the AIA. Accordingly, INS argues that, with respect to Chau's entry to the

1  United States, U.S. Immigration officials made no determination that provides "probative
2  force" as to Chau's claim that his father was a United States citizen because he entered as a
3  refugee. (Id.)

4  Whether or not Chau *could* have upheld a "reason to believe" finding before a U. S.
5  Immigration official that his father was a United States citizen, however, is not before this
6  Court. Rather, the undisputed fact remains that Chau was admitted to the United States under
7  INA § 207's refugee provision, which evidences no determination as to the citizenry of
8  Chau's father.  Therefore, the first issue of fact identified by the Ninth Circuit has been
9  resolved, as the parties agree that Chau entered the United States as a refugee, rather than
10 under the AIA.

### *2. Identity/Citizenship of Chau's Father*

12 The Court now proceeds to the first of three elements Chau must show by a
13 preponderance of evidence to establish derivative citizenship.

14 INA § 301 first requires Chau to furnish sufficient evidence from which a reasonable
15 person may conclude that his father was a citizen of the United States at the time of Chau's
16 birth. See INA § 301, 8 U.S.C. § 1401; see also Chau, 247 F.3d at 1030.  With Chau's
17 immigration status as a "refugee" pursuant to INA § 207 providing no evidence of Chau's
18 father's citizenship, Chau relies exclusively upon Ms. Chau's recollections of his natural
19 father to prove this element.  Thus, Ms. Chau's statements that Chau's father's name was
20 "Nick," that he appeared to be an African-American, and that he wore the uniform of an
21 American paratrooper (Doc. No. 61 at 6) represent the sole evidence before this Court
22 supporting Chau's claim that his natural father was a U.S. citizen.  The INS has neither
23 produced nor proffered any evidence to contradict Ms. Chau's statements. From Ms. Chau's
24 recollections regarding the identity of his father, Chau extrapolates that it is more likely than

1 not, "statistically speaking," that Chau's father was a U.S. citizen.[4] (Id. at 7.) Absent from Chau's filings, however, is any statistical evidence to support this assertion.[5]

In summary judgment analysis this Court must view the evidence in the light most favorable to the non-moving party, and as such, this Court takes as true Ms. Chau's statements for purposes of this Motion. Braxton-Street, 769 F.2d at 530. Her pertinent statements are as follows:

> Q: Was [Chau's father] Vietnamese or American?
> A. He was an American.
> Q: How do you know he was an American?
> A: Because he - - he was in the U.S. forces in Vietnam. And when he get a leave, he visited me in the - - in the bar and he was dressed in a - - in the uniform of a paratroopers.

Trans. of Deportation H'rg at p. 74, lines 5-11.

Therefore, Ms. Chau's statement that Chau's natural father was an American is based on her recollection that he was in the U.S. forces, dressed in the uniform of a paratrooper. However, even taking as true her statement that he was in the U.S. forces and wore a paratrooper's uniform, the Court notes that no evidence exists that a man who appears to be a U.S. serviceman must necessarily *be* one.

Moreover, service in the United States armed forces, in and of itself, does not confer citizenship on a serviceman. While the Court is unable to locate case law exactly on point, a related line of cases in which the alien-serviceman himself is attempting to change his immigration status to national is instructive. In Reyes-Alcaraz v. Ashcroft, the Ninth Circuit held that service in the U.S. armed forces does not alter an alien's immigration status. 363

---

[4]Chau's reliance on the AIA standard that an immigration official need only "reason to believe" that Chau was fathered by a U.S. citizen is misplaced, as it is undisputed that Chau immigrated to the United States as a refugee, not under the AIA. As stated *supra*, whether Chau could have entered under the AIA is irrelevant and not before the Court.

[5]In addition to a lack of statistical evidence, it appears no records search, such as a military records search through the Military Personnel Records division of the National Personnel Records Center in St. Louis, was conducted using the statements of Ms. Chau. Indeed, it is unlikely such a search would be productive, given the sparse information that Ms. Chau recollects.

- 9 -

F.3d 937, 938 (9th Cir. 2004); see also Theagene v. Gonzales, 411 F.3d 1107, 1112 (9th Cir. 2005) (same). Therefore, participation in the armed forces is not *per se* evidence of citizenship.

Thus, even when Ms. Chau's statements are taken as true, the Court finds a reasonable person could not find by a preponderance of the evidence that Chau's father was a U.S. citizen. Regardless of whether Chau's father appeared to be or actually was a U.S. serviceman, military service alone does not establish citizenship. Without more evidence than what is contained in this case's scant Record, it is unlikely that the parties would be able to successfully locate records providing independent evidence to support the facts asserted.

### *3. INA § 301's Physical Presence Requirement*

INA § 301 also requires that Chau provide sufficient evidence from which a reasonable person may conclude that Chau's father, before Chau's birth, was physically present in the United States for at least ten years, with at least five years of physical presence after his father's fourteenth birthday.[6] See INA § 301, 8 U.S.C. § 1401; see also Chau, 247 F.3d at 1030. A serviceman's period of honorable service may be included to satisfy the physical presence requirement. INA § 301, 8 U.S.C. § 1401.

In arguing this issue, Chau states that "statistical evidence will demonstrate the probability that his father . . . met the residency requirements" (Doc. No. 61 at 7.) However, as with the identity of his father, Chau furnishes no statistical evidence to support his assertion.

Chau may not rest upon the mere allegations or denials of . . . [his] pleadings, but . . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(c); Matsushita Elec. Indus. Co., 475 U.S. at 585-88. Further, the INS need not disprove matters on which Chau has the burden of proof at trial. Celotex, 477 U.S. at 323. Without

---

[6] Although neither party raises the issue, the Court notes that the Supreme Court has deemed the physical presence requirement constitutional. Nguyen, 533 U.S. at 58-59.

- 10 -

1  facts or evidence, the Court cannot infer that Chau's father met § 301's physical presence
2  requirement. To do otherwise would be to engage in pure speculation.

3  Therefore, given Chau's failure to produce any evidence regarding § 301's physical
4  presence requirement, this Court finds the record lacking in evidence upon which a
5  reasonable person could find that Chau's father met that requirement.[7] Furthermore, because
6  a "complete failure of proof concerning an essential element of the nonmoving party's claim
7  necessarily renders all other facts immaterial," this Court must find all other facts immaterial.
8  Id. at 323.

### *4. INA § 309's Legitimation Requirement*

10  The final element Chau must establish by a preponderance of the evidence is the
11  legitimation requirement of INA § 309. See Nguyen, 533 U.S. at 59. Although the Court
12  hereby incorporates pages five through eleven of its September 15, 2003 Order (Doc. No. 19)
13  regarding the legitimation requirement, the Court now summarizes its previous findings.

14  At the outset, the Court notes that two versions of § 309 exist. Because Chau was
15  born before 1986 when the statute was amended, he "falls within a transitional rule which
16  allows him to elect application of either" the post- or pre-1986 version of § 309. Id., 533
17  U.S. at 60. In its previous Order, the Court assumed that Chau would elect application of the
18  pre-1986 version of § 309, as it is less rigorous than the post-1986 version.[8]

19  As outlined by the Court in its previous Order, INA § 309 (8 U.S.C. § 1409) cross-
20  references § 8 U.S.C. 1101(c)(1), which provides:

> The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in

---

[7]Indeed, even assuming "Nick" was a U.S. serviceman, the Court notes that one could speculate endlessly upon a number of scenarios that call into question whether "Nick" met the physical presence requirement, such as whether "Nick" survived the war and whether his military service was honorable.

[8]In addition to the two requirements described by the Court, *infra*, the post-1986 version contained an additional requirement that the citizen-father agree in writing to provide financial support for the child until the child turns eighteen.

- 11 -

> the United States or elsewhere, . . . if such legitimation . . . takes place before the child reaches the age of sixteen years, and the child is in the legal custody of the legitimating . . . parent or parents . . . at the time of such legitimation.

8 U.S.C. 1101(c)(1) (1982). Thus, Chau must be legitimated according to the law of Arizona, where he was domiciled, and Chau must have been in the legal custody of his father as defined by Arizona law, in order to meet the third element for derivative citizenship.

The Court previously analyzed Arizona's legitimacy law, which provides that "[e]very child is the legitimate child of its natural parents and is entitled to support and education as if born in lawful wedlock." ARIZ. REV. STAT. § 8-601 (1975). The Court concluded in its previous Order that this issue constituted an issue of fact because the identity of Chau's father was unknown.

In order to meet § 309's legitimation requirement, Chau must also have been in his father's legal custody according to Arizona law. In its September 2003 Order, this Court examined Arizona law regarding custody and found that Chau would have been in the legal custody of his father if "parentage has been established." See In re Appeal in Maricopa County Juvenile Action No. JD-4974, 785 P.2d 1248, 1250 (Ariz. Ct. App. 1990). The Court again concluded that an issue of fact existed, as the identity of Chau's father was unknown.

While the Court therefore previously found that an issue of fact existed as to this legitimation requirement, the Court now finds that these facts are necessarily rendered immaterial due to Chau's complete failure of proof concerning § 301's citizenship and physical presence elements. Celotex, 477 U.S. at 323.

## CONCLUSION

In reaching its decision, the Court is mindful that this case presents difficult issues and that the application of the law may result in hardship. However, the Court is bound to apply the law. After having provided both sides ample opportunity to marshal evidence and brief the law, the Court finds that, as a matter of law, Chau has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case" because he has not provided (1) sufficient evidence that his father is a U.S. citizen and (2) any evidence to

establish INA § 301's physical presence requirement. See id. at 322. Consequently, because the Court finds that Chau has failed to provide facts sufficient to entitle him to relief as a matter of law, the Court will grant INS's Motion for Summary Judgment.

Therefore, having conducted the *de novo* determination regarding Chau's claim of U.S. citizenship as requested by the Ninth Circuit,

**IT IS HEREBY ORDERED** that Respondent's Motion for Summary Judgment (Doc. No. 54) is **GRANTED**. The Clerk of the Court shall terminate this action accordingly.

**IT IS FURTHER ORDERED** that this matter is returned to the United States Court of Appeals for the Ninth Circuit for further proceedings.

DATED this 28th day of March, 2006.

*[signature]*
Stephen M. McNamee
Chief United States District Judge